Argued at Pendleton October 26, affirmed November 23, 1926.

# STATE EX REL. DOROTHY RIGGS *v.* WALTER MACKEY.

(250 Pac. 744.)

**Bastards.**

1. In bastardy proceedings, under Sections 2550–2563, Or. L., corroboration of prosecutrix's testimony, required by Section 2554, *held* sufficient.

**Bastards.**

2. In bastardy proceedings, under Sections 2550–2563, Or. L., instruction as to quality required of testimony corroborative of prosecutrix's testimony *held* not erroneous, as tending to lead jury into speculation and uncertainty.

---

Bastards, 7 **C. J.**, p. 995, n. 58, p. 998, n. 15, 17, p. 999, n. 34.
Criminal Law, 16 **C. J.**, p. 706, n. 49, 53, p. 707 n. 54, p. 1049, n. 82, p. 1063, n. 85.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

This is a bastardy proceeding prosecuted under the provisions of Chapter II, Title XXI, Oregon Laws. Dorothy Riggs, an unmarried female, 18 years of age, charges that the defendant is the father of her child, born February 17, 1925. She asserts that the illicit act of sexual intercourse whereby she became pregnant occurred at Joseph, Oregon, May 17, 1924. The cause was submitted to a jury and a verdict returned finding defendant guilty as charged. The trial court entered judgment accordingly and ordered that the defendant pay a certain amount annually for the support of the child until it attained the age of 14 years. Defendant appeals.        AFFIRMED.

---

1. See 8 R. C. L. 192.

For appellant there was a brief over the name of *Messrs. Burleigh & Burleigh,* with an oral argument by *Mr. J. A. Burleigh.*

For respondents there was a brief over the name of *Mr. A. Fairchild,* with an oral argument by *Mr. Max Wilson,* District Attorney.

BELT, J.—1. Defendant's motion for a directed verdict of acquittal is based upon the contention that there is no corroboration of the testimony of the prosecutrix, as required by Section 2554, Or. L. Let us look to the record. Lillie Smalley testified that she saw defendant in company with her sister, Dorothy, on the evening of May 17, 1924. When defendant and prosecutrix left the home of the girl's parents in an automobile, they said that they were going to a show at Enterprise. The girl did not return until about dawn of the following day. She testified that illicit relations were had with defendant on this occasion. Two or three weeks before the child was born, the prosecutrix informed her mother of her pregnancy. The mother testified:

"Well, Mr. Riggs and I took Dorothy, and we went down to Jay Dobbins where he (defendant) was working, and told him it was gone this far we would like to go a little farther, and we didn't want the child born in this way without a name, and he mumbled around a little, and pretty soon he says, 'Well, I will be up Saturday night and settle it up,' and Dorothy says, 'Mamma, he won't come,' and he says, 'Yes, I will,' and I says 'You will sure be up,' and 'Sure' he says."

This conversation is claimed to have occurred soon after the parents learned of their daughter's condition. Defendant did not "show up" on Saturday,

but left, as he says, on the following Monday to join the navy at Seattle, Washington. A warrant was issued for his arrest, but, after diligent search, service could not be had. Upon being finally apprehended and arrested in Montana, he was brought back to Wallowa County in charge of an officer. On his return he went to the girl's home where she was confined in bed. What then took place is disclosed by the testimony of defendant on cross-examination:

"Q. Offered to settle, didn't you?

"A. No, I told her I would give her what it would cost to get a lawyer, and save taking it through court.

"Q. How much was that?

"A. $250.00.

"Q. You offered her $250.00?

"A. I told her I would give her $250.00 to save taking it through court; I didn't like to go through court with it.

"Q. There was no agreement made,—that is, no settlement effected on that basis at all?

"A. No."

These alleged admissions by defendant (*State* v. *Rathie et al.*, 101 Or. 339 (199 Pac. 169, 200 Pac. 790); *State* v. *Meister*, 60 Or. 469 (120 Pac. 406); 16 C. J. 706) and his suspicious conduct and flight after being advised of the girl's condition (16 C. J. 706), constitute sufficient corroborative evidence to take the case to the jury. Other facts and circumstances could be related which we think warrant this conclusion, but it is not deemed necessary so to do, since we are not concerned with the extent of the corroboration. There was no error in denying the motion for directed verdict.

2. Appellant takes exception to the giving of the following instruction:

"I instruct you that in this case the testimony of the complaining witness must be corroborated before

you would be justified in finding that the defendant is the father of the child in question. By corroborative testimony is meant any evidence other than that of the complaining witness, that tends to show the defendant's connection with the act complained of. This evidence need not be direct evidence, but may be circumstantial evidence, and you are at liberty and it is your duty in considering the question of corroborative evidence, to take into consideration all of the facts or testimony which tends to show the probability of the defendant's commission of the act complained of. You are not restricted to the consideration of direct testimony in determining this question, but you should consider all the circumstances and facts that bear upon the question of the defendant's guilt, and you are the judges of the sufficiency of this evidence, and whether or not the testimony of the complaining witness in this case has been corroborated.''

It is urged that this instruction was prejudicial to the defendant in that it tended to lead the jury into the realm of speculation and uncertainty in the consideration of the evidence. The jury was concered in determining a question of fact. It would seem that anything in the record which addressed itself to the reason as being probable might well be taken into consideration in arriving at a conclusion. In passing upon a question of fact, it is well, in weighing evidence, to ask, ''Is it probable?'' ''Is it reasonable?'' We hestitate to believe evidence which is improbable. The very purpose of requiring the testimony of an accomplice to be corroborated is to strengthen the probability of the truth of such testimony. If we entertained any doubt about the instruction, it would be removed by the following charge of the court:

''I instruct you, Gentlemen of the Jury, that the corroborative evidence is not sufficient if it merely

shows the commission of the act, or the circumstances of the act, or if it merely shows that there was an opportunity to commit the act, but the corroborative evidence must be such that it tends to connect the defendant with the commission of the charge, that of being the father of the child in question; and unless the corroborative evidence, if you find that there was corroborative evidence, is of a character that it tends to prove the defendant guilty of the act, that is, of being the father of the child, then you must acquit the defendant and return a verdict of not guilty.''

We have carefully examined the entire charge of the court and are convinced that defendant has no cause to complain. Every requested instruction to which appellant was entitled was either given or covered in the general charge.

Other assignments of error, concerning which no reference has been made in the brief, are deemed of no importance.

Judgment of the lower court is affirmed.

AFFIRMED.

RAND, J., absent.